UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

_____

JENNIFER FRANCE,

      Plaintiff,

v.

CHIPPEWA COUNTY, and
JIM GERMAN, in his official
and individual capacities,

      Defendants.

File No. 1:18-cv-235

Hon.

_____

## COMPLAINT AND JURY DEMAND

_____

### Complaint

Plaintiff Jennifer France, by and through her attorneys, Pinsky, Smith, Fayette & Kennedy, LLP, states as follows:

### Jurisdiction, Venue, and Parties

1.     This is an action requesting the Court to remedy violations of Plaintiff's right to Due Process of Law under the Fourteenth Amendment of the Constitution, pursuant to 42 U.S.C. § 1983; violations of Michigan's Whistleblower's Protection Act ("WPA"), Mich. Comp. Laws § 15.361, *et seq.*; and the related tort of violation of public policy under Michigan law.

2.     The Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1367.

3.      Plaintiff Jennifer France is a resident of Chippewa County, Michigan, and of the Western District of Michigan, Northern Division.

4.      Defendant Chippewa County ("the County") is a local unit of government organized pursuant to the law of the state of Michigan; a state actor; and an employer of Plaintiff under state law.  The County conducts its business throughout Chippewa County, which is located in the Western District of Michigan, Northern Division.

5.      Defendant Jim German is, upon information and belief, a resident of Chippewa County, Michigan.  Defendant German is employed as the County Administrator for Chippewa County.

6.      Venue is proper within this judicial district under 28 U.S.C. § 1391(b).

### Factual Allegations

7.      Plaintiff is employed as the Chief Public Defender for Chippewa County and has held that position since January 1, 2017.

8.      As Chief Public Defender for the County, Plaintiff is charged with providing legal representation to indigent persons charged with a criminal offense in the County, representing prison inmates, and assisting with Friend of the Court Collection matters.  Plaintiff's job description published by the County includes the following duties of the Chief Public Defender:

- Supervises, directs, and evaluates assigned staff, processing employee concerns and problems, counseling, disciplining, and completing employee performance appraisals; provides directions, advice, and technical expertise.
- Coordinates department work activities; organizes and prioritizes department workload; reviews work assignments;  monitors status

of work in progress; inspects completed work; troubleshoots problem situations.

- Ensures departmental compliance with all applicable codes, laws, rules, regulations, standards, policies and procedures; initiates any actions necessary to correct deviations or violations.
- Ensures adherence to established safety procedures; monitors work environment and use of safety equipment to ensure safety of employees and other individuals.
- Represents clients in all Court proceedings; interviews law enforcement personnel, witnesses, correction officers, and others; engages in negotiations with Prosecutor and clients; prepares correspondence, press releases, and legal documents; gathers and analyzes case evidence; conducts research and reviews evidence, exhibits, reports, statements, etc.; appears and argues in court for arraignments, preliminary hearings, pre-trial motions, presents case, examines and cross examines witnesses; issues subpoenas for witnesses to appear, testify, or provide evidence pertinent to case.
- Conducts and/or arranges for investigations; researches experts in a particular field.
- Updates and organizes files; maintains files and filing systems.
- Prepares and monitors annual budget; reviews office expenditures.

(Exhibit A.)

9.      No written contract or employee handbook defines the terms and conditions of Plaintiff's employment in her position with the County.

10.      Certain County employees are part of three different recognized bargaining units represented by the American Federation of State, County and Municipal Employees, AFL-CIO Local 1552 of Michigan, #25.  Although Plaintiff was not part of any of these three bargaining units, the County often defines terms and conditions of employment for its non-bargaining unit employees by referencing terms and conditions of employment found in the Collective Bargaining Agreements ("CBAs") for the County's bargaining unit employees, like the Pay Grade scales, leave policies, and the other terms and conditions of employment found in the

CBAs. (See, e.g., Exhibit B.) The long-time practice of the County has been to follow the same policies and procedures for its non-bargaining unit employees as are found in the CBAs, like that at Exhibit B.

11.     The CBAs contain provisions requiring that employees only be terminated for just cause. Accordingly, based on the County's established practice of following the terms and conditions of the CBAs for its non-bargaining unit employees, and therefore adopting those terms and conditions for Plaintiff's employment, Plaintiff could only be terminated for just cause.

12.     The Honorable James Lambros is the sole Circuit Court Judge for the 50th Judicial Circuit Court in Chippewa County. Judge Lambros was also the Chief Circuit Court Judge at all times relevant to this complaint.

13.     The Honorable Eric G. Blubaugh is the sole District Court Judge for the 91st District Court, located in Chippewa County, and held that position for all times relevant to this complaint.

14.     At all times relevant to this complaint, upon information and belief, Judge Blubaugh has lived with Alexis Lambros in a romantic relationship and in a domestic partnership.  Ms. Lambros is the sister of Judge Lambros.

15.     Judges Blubaugh and Lambros are de facto brothers-in-law, even if not legally so by marriage.

16.     The State Bar of Michigan is the governing body for lawyers in the State of Michigan. Membership is mandatory for attorneys who practice law in Michigan.

17.     The conduct of attorneys in Michigan are governed by, among other rules and statutes, the Michigan Rules of Professional Conduct ("the Ethics Rules"). The Ethics Rules also govern the ways in which attorneys are required to fulfill their professional duties to their clients.  Attorneys are required to follow the Ethics Rules, and the State Bar can initiate discipline proceedings against attorneys who do not abide by the Ethics Rules.  The State Bar maintains an Ethics Hotline that attorneys may call to ask for advice regarding their obligations under the Ethics Rules.

18.     In addition, criminal defendants are entitled under the Sixth Amendment to the U.S. Constitution to "effective assistance of counsel," which provides another guideline for the responsibilities of attorneys representing persons charged with crimes.

19.     Plaintiff and other attorneys working under her direction in the Public Defender's Office became concerned about the conflict of interest and/or the appearance of such created by Judge Blubaugh's close personal connection and de facto familial relationship to Judge Lambros, and as governed by the Michigan Court Rules.

20.     Because of the conflict of interest, Plaintiff believed Judge Lambros should recuse himself from judicial review of Judge Blubaugh's decisions which criminal defendants appealed.  At the very least, Plaintiff believed that it was her ethical duty as the Chief Public Defender to raise the issue to an appellate judicial

authority able to rule on the question, since the issue was also likely to repeatedly occur with respect to the interests of multiple defendants in the future.

21.     Plaintiff encountered this scenario when she represented a defendant on a matter to clarify a prior ruling in a preliminary examination in front of Judge Blubaugh.

22.     Judge Blubaugh ruled against Plaintiff's client, and Plaintiff appealed Judge Blubaugh's ruling on behalf of her client to the Circuit Court, as provided for in the Michigan Court Rules.

23.     Because of her concerns regarding the legal conflict of interest of Judge Lambros reviewing Judge Blubaugh's decision, she made a motion that Judge Lambros recuse himself.  Judge Lambros denied the motion to recuse himself on October 17, 2017.

24.     Both the prosecutor and Plaintiff requested that a visiting Circuit Court judge be assigned to review Plaintiff's motion to recuse Judge Lambros.  The State Court Administrator's Office assigned a visiting judge, the Hon. Jennifer A. Mazzuchi, Circuit Court Judge of Marquette County, to review the motion.

25.     On November 14, 2017, Judge Mazzuchi ruled that there was no conflict of interest in Judge Lambros reviewing Judge Blubaugh's decisions, although Judge Mazzuchi wrote in her Opinion, "The Court recognizes that the relationship between the judges could cause one to question the potential for disqualification."  Judge Mazzuchi's decision was issued while Plaintiff was on vacation.  When Plaintiff returned from vacation, she had less than a week under

the Michigan Court Rules to file an Interlocutory Appeal to the Michigan Court of Appeals to ask to have the issue reviewed there.

26.    Plaintiff, having multiple other duties, including a full client case load, appointed a Chippewa County Court-approved outside panel attorney and experienced appellate lawyer, Mark Dobias, to handle the Interlocutory Appeal and perform the necessary work.  In addition, under the circumstances, Plaintiff's professional judgment was that an experienced appellate attorney was necessary to appropriately present the issue to the Michigan Court of Appeals.

27.    Under the prior practice followed by the County, the Chief Public Defender had absolute discretionary authority to appoint an approved outside attorney to take a case or help with a matter when necessary to fulfill the work of the Public Defender's Office in representing indigent criminal defendants, whether because of a conflict of interest present with the Public Defender's Office, or because of any other reason.

28.    On or about Friday, December 8, 2017, Defendant German contacted Plaintiff and was upset that she was pressing the issue of the potential disqualification of Judge Lambros in hearing appeals from Judge Blubaugh on behalf of her client, by asking for an immediate hearing on the issue from the Michigan Court of Appeals.  Defendant German's displeasure was based at least in part on the cost to the County if a court disqualified Judge Lambros as a general matter from hearing Judge Blubaugh's appeals, since the County would need to make longer-term arrangements for the additional cost of a visiting judge to hear

those.  Specifically, Defendant German angrily asked Plaintiff, "Why are you trying to cost the County more money?"

29.     In an email to Defendant German, also on December 8, 2017, Plaintiff explained that since her client wanted to appeal the disqualification issue, she was required to do so under the circumstances, or she could face a State Bar grievance, i.e., potential discipline under the Ethics Rules, and/or the Public Defender's Office could face potential civil liability for failure to provide effective assistance of counsel under the Sixth Amendment to the U.S. Constitution.  Moreover, Plaintiff wrote to Defendant German, "I understand this is not a popular issue but in the end a final answer is needed to avoid future grievances and lawsuits in other cases."

30.     Later that same day, Defendant German called Plaintiff and instructed her to do the work on the Interlocutory Appeal herself.  An hour later, Defendant German then called Plaintiff again and told her he was suspending her for a week without pay to punish her for hiring Mr. Dobias "without authority" to work on the Interlocutory Appeal.  Defendant German told Plaintiff "she [was] lucky" that he was not firing her.  Defendant German was also very angry that Mr. Dobias called Defendant German on Plaintiff's behalf.

31.     Upon learning of Plaintiff's suspension, Mr. Dobias offered to do the work on the Interlocutory Appeal without charge to the County.

32.     After being notified of her suspension without pay on a Friday afternoon, December 8, 2017, Plaintiff called the State Bar's Ethics Hotline and asked for advice about her obligations to her clients during her suspension from

work.  The State Bar advised Plaintiff that under the Ethics Rules, she was prohibited from taking any actions which might disadvantage a client's position or which would constitute neglect of a legal matter entrusted to her, like staying home from work because she was suspended, even if her employer was otherwise mandating that course of action and refusing to pay her.

33.     Plaintiff represented another criminal defendant in a murder case with a preliminary examination scheduled for Tuesday, December 12, 2017.  In addition, Plaintiff had other clients with multiple preliminary examinations and other hearings scheduled for Monday, December 11, 2017.

34.     Under Michigan's criminal procedure, a preliminary examination is a critical hearing for a defendant in a criminal case.

35.     Plaintiff was the only attorney in her office who had worked on the murder case and the only attorney prepared for the December 12, 2017 preliminary examination.  Plaintiff expected the preliminary examination to be complex and take all day.  She determined that if she did not represent the client at the preliminary examination in the murder case on December 12, 2017, as well as the hearings scheduled for the next business day, Monday, December 11, 2017, she would be neglecting the legal matters entrusted to her and disadvantaging her clients as a result, in violation of the Ethics Rules.  This was also the conclusion of the individual at the State Bar Ethics Hotline from whom Plaintiff sought advice.

36.     Knowing it was her ethical duty to do so, Plaintiff appeared in court on Monday, December 11, 2017, to represent her clients with hearings that day,

despite being on unpaid suspension.  Defendant German and Kelly Church, the

County's Deputy County Administrator, confronted Plaintiff in the hallway of the

courthouse, demanding that Plaintiff leave.  Plaintiff informed them that she had

an ethical duty to represent her clients that day even if she was on unpaid

suspension.  After discussion with the judges, the hearings for Plaintiff's clients

were rescheduled from Monday, December 11, 2017 to other dates.  Defendant

German then agreed that Plaintiff would be permitted to handle the preliminary

examination in the murder case as scheduled for Tuesday, December 12, 2017, with

pay for that day.

37.     Later on December 11, 2017, Ms. Church called Plaintiff at home and

demanded to know with whom at the State Bar Ethics Hotline Plaintiff had spoken

with regarding her ethical questions about her duty to represent her clients despite

her employment suspension.

38.     Ms. Church, as Deputy County Administrator, reports directly to

Defendant German and was calling on his behalf.  Ms. Church's tone made it clear

that Defendant German was angry that Plaintiff had contacted the State Bar and

spoken with them about her ethical concerns and whether she had an ethical duty

to represent her clients in hearings on December 11 and 12, 2017.

39.     When Defendant German imposed the discipline of a week's

suspension without pay, Plaintiff believed that pursuant to the terms and

conditions of her employment, she would be entitled to an appeal or further review

of that decision and inquired of a County Commissioner how she could be heard on

the issue of objecting to her discipline. That Commissioner told Plaintiff that he did not know how she could obtain a hearing or further review of Defendant German's discipline decision.

40.    Plaintiff was then forced to hire an attorney at her own expense. Plaintiff's attorney, Sarah Riley Howard, wrote Defendant German on December 15, 2017, and asked that Plaintiff's suspension without pay be reversed because it violated the law.

41.    An attorney for Defendants notified Plaintiff's attorney on March 2, 2018, that Defendants refused to reverse Plaintiff's suspension without pay.

42.    Judge Lambros eventually recused himself from the matter in which Plaintiff sought his disqualification when he learned that the Circuit Court Administrator, for whom he is the direct supervisor, was the complainant in the underlying criminal case for which the defendant was presently on parole.

43.    In January 2017, Plaintiff also raised concerns regarding violations of Ethics Rules when Robert Stratton became the elected Prosecutor for Chippewa County.

44.    Prior to becoming the Prosecutor, Mr. Stratton was the Chief Public Defender for Chippewa County and was Plaintiff's immediate predecessor.

45.    Plaintiff was concerned that Mr. Stratton was acting as the Prosecutor on cases that had been open and active during his time as the Chief Public Defender, and believed that this might be prohibited under the Ethics Rules. When

Mr. Stratton was Chief Public Defender, he was one of two attorneys in the Public

Defender's Office.

46.     Plaintiff called the State Bar of Michigan Ethics Hotline to discuss her

concerns and determined that it was a conflict of interest for Mr. Stratton to act as

prosecutor on any cases that were open in the Chippewa County Public Defender's

Officer during the time he served as Chief Public Defender.

47.     This conflict required that a special prosecutor be brought in to

prosecute cases that were open during Mr. Stratton's tenure as the Chief Public

Defender.

48.     On multiple occasions, Defendant German expressed his concerns

about the extra money required to hire a special prosecutor, and to bring in an

outside or visiting judge, when conflicts are found to exist.  Defendant German also

expressed his unhappiness that Plaintiff raised these issues because she was

ethically required to do so.

49.     On February 23, 2018, Defendant German called Plaintiff and again

became angry over funding for the Public Defender's Office and Plaintiff's actions

that she believes are ethically required to fulfill her duties, because he perceived

that her acting upon her responsibilities as an attorney might cost the County

additional funds.  Defendant German intimated that Ms. France would be held

accountable in a manner negative to her continued employment prospects if her

actions continued – in his assessment – to cost the County money.  Defendant

German also intimated that he might unlawfully retaliate against Plaintiff if she pursued legal action against the County to enforce her employment rights.

50.    Defendant German retaliated against Ms. France by imposing the reprimand and the unpaid suspension as discipline because she continued to raise issues of ethical violations, where he perceived that complying with the State Bar's Ethics Rules, and potentially taking actions necessary to ensure that constitutional rights were respected, could result in additional financial cost to the County.

51.    Defendant German's stated reason for disciplining Plaintiff – that she hired outside panel attorney Mark Dobias without Defendant German's authorization – was not the true reason for discipline, was a mere pretext, was based on an action that did not violate any County policy or requirement of Plaintiff's job position, and would not have supported such severe discipline in any event.

## Count I - Violation of Right to Due Process of Law Under the Fourteenth Amendment to the U.S. Constitution

52.    Plaintiff relies on the allegations of all prior paragraphs, as if they were restated herein.

53.    The terms and conditions of Plaintiff's employment established by the County's past practice, as found in the CBAs, required that Plaintiff be discharged only for just cause.

54.    Defendant German disciplined Plaintiff without good reason or just cause.

55.     Defendant German did not permit Plaintiff any type of a pre-discipline or post-discipline hearing prior to implementation of the discipline.

56.     Plaintiff has a property interest in her employment as defined by the Fourteenth Amendment to the U.S. Constitution, 42 U.S.C. § 1983, and *Loudermill v. Cleveland Board of Education*, 470 U.S. 532 (1985) ("*Loudermill*").  Accordingly, Plaintiff can only be disciplined with loss of pay and benefits in accordance with due process of law.

57.     Defendant German's discipline of Plaintiff, via suspension without pay, without just cause and without providing her with either a fair pre-discipline and/or post-discipline hearing contrary to the Fourteenth Amendment to the U.S. Constitution; 42 U.S.C. § 1983; and *Loudermill*, depriving her of due process of law.

58.     As a result of Defendant German's failure to provide a fair pre-discipline and/or post-discipline hearing, Defendant German is liable to Plaintiff for damages, including past lost wages and benefits; removal of the discipline from her employment record; compensatory damages for emotional and mental distress; attorney fees and costs; and punitive damages.

WHEREFORE, Plaintiff requests that the Court grant her judgment against Defendants including the following relief: (1) an award of past lost wages and benefits; (2) compensatory damages for emotional and mental distress; (3) punitive damages in an amount as determined by a jury; plus (4) interest and costs, including reasonable attorney's fees pursuant to 42 U.S.C. § 1988, and any other relief deemed necessary and proper by the Court.

### Count II – Violation of Michigan's Whistleblowers' Protection Act, Mich. Comp. Laws 15.361 *et seq.*

59.     Plaintiff incorporates the allegations of all prior paragraphs as if set forth herein.

60.     Plaintiff seeks legal and equitable relief for Defendants' retaliatory and unlawful discipline in Plaintiff's employment, via a week's suspension without pay, in violation of the Whistleblowers' Protection Act, Mich. Comp. Laws § 15.361, *et seq.*

61.     Defendant, the County, was Plaintiffs' "employer," for purposes of Michigan's Whistleblowers' Protection Act.

62.     Defendant German was also Plaintiff's "employer," for purposes of Michigan's Whistleblowers' Protection Act.  He has the power, or has asserted the power with the approval of the County Commission, to discipline Plaintiff, act in direct supervision of her, and, in some respects, directs her activities.

63.     Defendants had knowledge that Plaintiff reported concerns of judicial conflicts of interest or was about to report those concerns to a "public body" as defined by Michigan law, and Defendants disciplined Plaintiff by suspending her for a week without pay because of her protected activity.

64.     By disciplining Plaintiff as aforesaid, Defendants violated the Whistleblowers' Protection Act.

65.     As a result of the foregoing, Plaintiff lost earnings and benefits and suffered mental anguish, emotional distress, unfair reputational damage, unfair

employment record discipline, and undue harm to her career, as well as incurred attorney fees, for which Defendants are liable.

WHEREFORE, Plaintiff Jennifer France demands judgment against Defendants for any and all economic and non-economic compensatory and exemplary damages for whatever amounts the jury finds necessary; injunctive relief as appropriate, including removal of the discipline from her employment record; plus the costs of this action, attorneys' fees, interest and such other relief as this Court deems just, proper and equitable.

## Count III – Discipline of Employment in Violation of Michigan's Public Policy

66.     Plaintiff incorporates the allegations of all prior paragraphs as if set forth herein.

67.     Defendants' discipline of Plaintiff in her employment, by suspending her for a week without pay, violated Michigan public policy because Defendants did so solely in retaliation for Plaintiff's report to governmental authorities of violations of ethics rules and/or potential violations of ethics rules, and solely in retaliation for Plaintiff's good faith efforts to reasonably discharge her duties as an attorney.

68.     Michigan's public policy requires that attorneys comply with the State Bar's Ethics Rules for the good of the general public and for the enforcement of critical rights found in both the U.S. and Michigan Constitutions.  This is particularly true with respect to the duties of an attorney representing an individual charged with a crime or in a related proceeding, like a parole violation charge, given that the individual is faced with potential loss of liberty.

69.     State law gives the State Bar the power to discipline an attorney who violates the Ethics Rules, up to and including loss of her license to practice law.

70.     An attorney who does not provide legal counsel which rises to the level of "effective assistance of counsel" pursuant to the Sixth Amendment to the U.S. Constitution, as that term has been defined by case law, may be subject to civil liability.

71.     By disciplining Plaintiff under the conditions as stated aforesaid, Defendants violated Michigan public policy, a common law tort under Michigan law.

72.     As a result of the foregoing, Plaintiff lost earnings and benefits and incurred mental anguish, emotional distress, unfair reputational damage, legal costs, and undue damage to her career for which Defendants are liable.

WHEREFORE, Plaintiff Jennifer France demands judgment against Defendants for any and all economic and non-economic compensatory damages for whatever amount the jury finds necessary, and further demand judgment against Defendants for exemplary damages for whatever amount the jury finds necessary, plus the costs of this action, attorneys' fees, interest and such other relief as this Court deems just, proper and equitable.

PINSKY, SMITH, FAYETTE & KENNEDY, LLP
Attorneys for Plaintiff Jennifer France


Dated: March 7, 2018        By:___/s/ Sarah R. Howard_____
                                Sarah Riley Howard
                                Erin L. Dornbos
                                146 Monroe Center St NW, Suite 805
                                Grand Rapids, MI  49503
                                (616) 451-8496

## JURY DEMAND

To the extent that jury trial is available as to any of the issues set forth

above, Plaintiff hereby demands same.


PINSKY, SMITH, FAYETTE & KENNEDY, LLP
Attorneys for Plaintiff


Dated: March 7, 2018        By:   /s/ Sarah R. Howard
                                  Sarah Riley Howard
                                  Erin L. Dornbos
                            Business Address and Telephone Number:
                                  146 Monroe Center St NW, Suite 805
                                  Grand Rapids, MI  49503
                                  (616) 451-8496